UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GEORGE-JASON A. HELM,

      Plaintiff,

 v.

MICHAEL HUGHES, et al.,

      Defendants.

No. C09-5381 RJB/KLS

**REPORT AND RECOMMENDATION**
**Noted for: February 12, 2010**

Presently before the Court is the Fed.R.Civ.P. 12(c) motion to dismiss of Defendants Michael Hughes, Janet Gaines and Sean Murphy. Dkt. 15. Defendants argue that Plaintiff's Complaint should be dismissed because Plaintiff has failed to state a claim for which relief may be granted and because Defendants are entitled to qualified immunity. *Id.* Plaintiff George-Jason A. Helm has filed a response. Dkt. 21.[1]

Having reviewed the motion, response, and balance of the record, the court recommends that the motion to dismiss be denied.

---

[1] Plaintiff's response was due on November 6, 2009, but he did not file it until November 25, 2009. Nevertheless, the court has considered Plaintiff's response, but not the attachments. The documents attached to Plaintiff's response appear to relate to the filing of his grievance and exhaustion of grievances. Dkt. 18 at pp. 12-20. Defendants did not raise the issue of exhaustion of remedies nor are the documents necessary to the court's determination of the motion before it and they were not considered.

REPORT AND RECOMMENDATION - 1

# I. STANDARD OF REVIEW

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The standard governing a Rule 12(c) motion for judgment on the pleadings is essentially the same as that governing a Rule 12(b)(6) motion. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog."); *Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Reg'l Planning Agency*, 24 F.Supp.2d 1062, 1066 (E.D.Cal.1998) ("The standard governing a Rule 12(c) motion for judgment on the pleadings is essentially the same as that governing a Rule 12(b)(6) motion.").

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may grant a dismissal for failure to state a claim "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

On a motion to dismiss, material allegations of the complaint are taken as admitted and the complaint is to be liberally construed in favor of the plaintiff. *Jenkins v. McKeithen*, 395

REPORT AND RECOMMENDATION - 2

U.S. 411, 421 (1969), reh'g denied, 396 U.S. 869 (1969); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). Where a plaintiff is proceeding pro se, his allegations must be viewed under a less stringent standard than allegations of plaintiffs represented by counsel. *Haines v. Kerner*, 404 U.S. 519 (1972), reh'g denied, 405 U.S. 948 (1972). While the court can liberally construe a pro se plaintiff's complaint, it cannot supply an essential fact that the plaintiff has failed to plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## II. BACKGROUND

**A.  Allegations Contained in Plaintiff's Complaint (Dkt. 13)**

For purposes of this Fed.R.Civ.P. 12(c) motion, the following allegations are taken as admitted:

In September, 2008, Correction Officer Benge stopped and searched Mr. Helm and confiscated his state hat because Officer Benge felt that it was altered. Officer Benge indicated that he was going to search Mr. Helm's cell and Officer Benge became belligerent, which caused Mr. Helm to be intimidated. Mr. Helm immediately filed an offender complaint with McNeil Island Corrections Center (MICC) grievance coordinator Michael Hughes, complaining that Officer Benge was disrespectful and abused his discretionary authority. Mr. Helm also wrote the following in his grievance:

> "his manner and demeanor is not conducive to rehabilitation." This was abuse, abuse is violence, violence begets violence." "If I didn't have such self control like some, there would have been an incident."

REPORT AND RECOMMENDATION - 3

After receiving Mr. Helm's grievance, Mr. Hughes wrote a disciplinary infraction against Mr. Helm, stating that Mr. Helm violated WAC 137-28-260 (506 – threatening another with bodily harm)[2], when he wrote "this was abuse. Abuse is violence." "Violence begets violence."

At his disciplinary hearing, Mr. Helm plead not guilty, requested not to be punished and that he did not threaten. The hearing officer, Janet Gaines, found him guilty based on written testimony and the infraction by Mr. Hughes. Mr. Helm was sanctioned with 10-days cell confinement and 30 hours of extra duty. Mr. Helm appealed the decision, arguing that he was retaliated against with disciplinary punishment for his good faith participation in the grievance program. On October 29, 2008, Associate Superintendent Sean Murphy affirmed Mr. Helm's disciplinary conviction. Mr. Helm's grievance against Corrections Officer Benge was never investigated or heard.

**B.     Plaintiff's Claims**

Mr. Helms alleges that Defendants Hughes, Gaines and Murphy subjected him to disciplinary punishment in retaliation for his good faith participation in the MICC grievance program in violation of his First and Fourteenth Amendment rights. Dkt. 13, p. 5. He alleges that Defendant Gaines failed to discharge her duties to provide a fair and impartial review of the facts, and that Defendant Murphy's failure to fairly and impartially review the infraction reports and determine whether Mr. Helms made direct threats to staff members violated his right of due process under the 14th Amendment. *Id.*, p. 6. Mr. Helms alleges that the Defendants' conduct of subjecting him to disciplinary punishment in retaliation for filing and seeking administrative

---

[2] The correct WAC, as noted by Defendants at Dkt. 15, p. 7, is WAC 137-25-030(506), a Category B – Level 3 Serious Infraction.

REPORT AND RECOMMENDATION - 4

redress against a correctional staff person has had a chilling effect on his desire to file grievances. *Id.*, p. 7.

Mr. Helm seeks compensatory and punitive damages, and declaratory relief in the form of an order finding that state employees who deliberately subject prisoners to retaliatory punishment for filing complaints should be terminated from State employment. *Id.*, p. 7.

**C.     Defendants' Motion to Dismiss**

Defendants argue that Mr. Helm's complaint must be dismissed because (1) he has no liberty interest in the infraction hearing when he did not lose good time; (2) he has no right to be placed in any specific area or custody level; (3) he has failed to state a valid First Amendment violation because he has no right to threaten prison officials; and (4) he has failed to state a claim of retaliation because he engaged in behavior that was a threat to the safety and security of the institution and Defendants' action was in response to that behavior. Dkt. 15, p. 2. Defendants also argue that they are entitled to qualified immunity because there is no case law stating that an inmate may not be infracted for threatening another person. *Id.*, p. 10.

## III.  LAW

Of fundamental import to prisoners are their First Amendment "right[s] to file prison grievances," *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield. See, e.g., *Pratt v. Rowland*, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995) ("[T]he prohibition against retaliatory

REPORT AND RECOMMENDATION - 5

punishment is 'clearly established law' in the Ninth Circuit for qualified immunity purposes. That retaliatory actions by prison officials are cognizable under § 1983 has also been widely accepted in other circuits." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (internal citations omitted).

Prisoners have a constitutionally protected right to file grievances and to pursue civil rights litigation without retaliation. *Rhodes*, 408 F.3d at 567; see also *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (prisoner may not be retaliated against for use of grievance system); *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.1995) (prisoner may not be penalized for exercising the right of redress of grievances). Because harm that is more than minimal will always have a chilling effect, an inmate need not expressly allege a chilling effect to have a viable claim of First Amendment retaliation. *Rhodes*, 408 F.3d at 567 n. 11; *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989). And a chilling effect on a prisoner's constitutional right to file grievances is sufficient to raise a retaliation claim against prison officials. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir.2003).

To prevail on a retaliation claim under 42 U.S.C. § 1983, Mr. Helm has to establish that DOC employees retaliated against him for exercising his constitutional rights; that the retaliatory action chilled the exercise of his First Amendment rights; and that the retaliatory action failed to advance legitimate penological goals, such as preserving institutional order and discipline. *Rhodes*, 408 F.3d at 567-68. In addition, a court evaluates a retaliation claim in light of the deference afforded to prison officials. *Pratt*, 65 F.3d at 807.

REPORT AND RECOMMENDATION - 6

## IV. DISCUSSION

### A. Retaliation and Due Process

Defendants argue that the Plaintiff's retaliation claim must be dismissed because he was not engaged in a constitutionally protected activity when he wrote a grievance containing a threat. They also assert that the Plaintiff has presented no evidence of retaliatory motive for the infraction and that their actions were taken in response to what Mr. Helm wrote in his grievance, not because he was engaging in the grievance process, an admittedly constitutionally protected activity. Dkt. 15, p. 9. Defendants assert in their motion, without any evidentiary support, that limiting an inmate's ability to write threats in any forum, including a grievance, is a legitimate penological interest and that there is a rational connection between the regulation (WAC 137-25-030(506) prohibiting threats of bodily harm) and the penological interest of maintaining the safety and security of the institution by limiting violence and threats of violence from offenders. Dkt. 15, p. 7.

Mr. Helm asserts that the language in his grievance did not violate the regulation yet he was still infracted for its violation. He asserts the infraction was issued in retaliation for his filing the grievance in the first place.

Mr. Helm alleges in his complaint that he was engaged in a protected activity -- the writing of a grievance to complain of Officer Benge's threatening behavior. Dkt. 13, p. 5. He alleges that he did not threaten Officer Benge in his grievance and that Officer Hughes retaliated against him for filing the grievance by wrongfully infracting him for threatening Officer Benge by using the language "[t]his was abuse. Abuse is violence. Violence begets violence." *Id.*, p. 4.

The language in his complaint constitutes a claim for retaliation. Mr. Helm plead facts sufficient to state a claim for which relief may be granted. Dismissal is appropriate only if it appears beyond doubt that the plaintiff cannot prove any set of facts that would justify recovery. See Fed. R.Civ.P. 12(b)(6). Based on his pleadings, Mr. Helm could prove facts that would justify recovery for First Amendment retaliation. Mr. Helm alleges that he was the subject of threatening behavior by a prison guard and that when he filed a grievance regarding that behavior he was infracted and the grievance regarding the guard was never investigated.

When taken together and assuming all of his allegations are true, dismissal of Mr. Helm's retaliation claim is inappropriate. Although Mr. Helm does not specifically allege that Defendants' retaliatory action failed to advance legitimate penological goals,[3] for purposes of this motion, the court considers the Plaintiff's statement that the language used in the grievance was not a threat. With that assumption, again for purposes of this motion only, there can be no legitimate penological purpose for the infraction. In a motion to dismiss, the court accepts Plaintiff's version of the facts and any reasonable inferences that can be drawn there from. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Based on this standard, the defendants' motion to dismiss under Fed.R.Civ.P. 12(c) should be denied.

Finally, Defendants argue that Plaintiff does not have a liberty interest in his infraction hearing because he did not lose any good time credits and his cell confinement does not rise to the level of a constitutional violation because Mr. Helm has no constitutional right to a particular classification of custody level. Dkt. 15, pp. 4-5. In his response to the motion to dismiss, Mr. Helm clarified, and the allegations of his complaint confirm, that he does not allege violation of

---

[3] Mr. Helm bears the ultimate burden of showing that there was no legitimate penological objective to defendants' actions. *See Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir. 1995).

REPORT AND RECOMMENDATION - 8

his due process rights at his infraction hearing, but a due process right to the grievance process which was thwarted by the retaliatory acts of Defendants. Dkt. 18, p. 4. Thus, Mr. Helm is not required to establish an "atypical and significant hardship" as a result of the infraction to establish a retaliation claim under the First Amendment. See, e.g., *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir.2005); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.1995). He may base his retaliation claims on harms that would not raise due process concerns. *Hines v. Gomez,* 108 F.3d 265 (9th Cir. 1997) (loss of ten days confinement and television loss).

To succeed on his retaliation claim, Mr. Helm need not establish an independent constitutional interest in either assignment to a given prison, placement in a single cell or a liberty interest in the sanctions he received, "because the crux of his claim is that state officials violated his First Amendment rights by retaliating against him for his protected speech activities." *Pratt*, 65 F.3d at 806.

Accordingly, the undersigned finds that Mr. Helm has stated a viable claim of First Amendment retaliation and recommends that Defendants' motion to dismiss (Dkt. 15) on the grounds that Mr. Helm has failed to state a cognizable Section 1983 claim, be denied.

To the extent Plaintiff is claiming a violation of his due process rights at his disciplinary hearing, a due process claim is cognizable only if there is a recognized liberty or due process interest at stake. *Rizzo v. Dawson,* 778 F.2d 527, 530 (9th Cir. 1985) (citing *Board of Regents of California v. Roth,* 408 U.S. 564 (1972)). Because Plaintiff did not lose any good time credits and his confinement was not extended in any way by the imposition of sanctions following his infraction, he would be required to establish another "atypical and significant hardship" on which to base his claims. *See e.g., Toussaint v. McCarthy,* 801 F.2d 1080 (9th Cir. 1986). Therefore, to

REPORT AND RECOMMENDATION - 9

the extent that the complaint alleges due process rights were violated during the disciplinary hearing or in review, Defendants' motion to dismiss should be granted.

**B.      Doctrine of Qualified Immunity**

Defendants assert that they are protected from suits for civil damages due to the doctrine of qualified immunity because they relied on an agency rule that allows them to infract an inmate for threatening another person.  Dkt. 15, p. 10.

The entitlement to qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The defense of "qualified immunity" protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)); *Jeffers v. Gomez*, 267 F.3d 895, 909-910 (9th Cir.2001).

The Supreme Court recently held that the test for qualified immunity in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), is no longer a rigid two step analysis. *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).   However, the *Saucier* analysis is still pertinent for qualified immunity purposes.  *Pearson*, 129 S.Ct. at 818. Pursuant to *Saucier*, the first step in a qualified immunity analysis is, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151; *Jackson v. City of Bremerton*,

REPORT AND RECOMMENDATION - 10

268 F.3d 646, 650 (9th Cir.2001); *Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir.2003) (noting that because qualified immunity is "'an entitlement not to stand trial' ... courts, not juries, [must] settle the ultimate questions of qualified immunity") (quoting *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151; *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1078 (9th Cir.2003).

The second step of the qualified immunity analysis is to determine whether a reasonable official would not have understood that his actions violated the clearly established right. *Harlow,* 457 U.S. at 818; *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001); *Saucier*, 533 U.S. at 205.

As noted above, the court finds that at this stage of the proceedings and pursuant to the 12(c) motion, Mr. Helm has set forth sufficient allegations of a First Amendment retaliation claim against Defendants to overcome the Defendants' motion. This satisfies the first prong of *Saucier* because the facts alleged in the Complaint show that Defendants' conduct violated Mr. Helm's constitutional right to engage in the grievance process. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.

With regard to the second prong of the *Saucier* analysis, Defendants argue that they acted reasonably because Mr. Helm's grievance and issues would have been investigated to determine if the officer in question was treating him unfairly had he not included the language "violence begets violence," and allowing inmates to write threats in grievances or any format would undermine the authority of prison staff and allow inmates to use threats to gain control of the

REPORT AND RECOMMENDATION - 11

institution by threatening violence against offenders. Dkt. 15, p. 7. They also argue that the words "violence begets violence," can be nothing other than a threat. Dkt. 21, p. 4.

The problem with Defendants' argument is that it turns on facts not contained in the complaint and asks the court to draw inferences that Defendants wish the court to draw from those facts – something this court cannot do in a motion to dismiss. *See Hydrick v. Hunter (Hydrick II),* 500 F.3d 978, 985-86, 1001 (9th Cir. 2007). Whether the Defendants' conduct was reasonable involves a factual analysis of the circumstances surrounding Defendants' actions and a determination of whether a reasonable official similarly situated would have been aware that his actions violated the law, an inquiry difficult to conduct at the motion to dismiss stage. *Id.*

Focusing on the facts as alleged by Mr. Helm in his complaint, the court concludes that the Defendants have not established that they could have reasonably, but mistakenly, believed that their conduct did not violate Mr. Helm's clearly established constitutional rights. The prohibition against retaliatory punishment is "clearly established law" in the Ninth Circuit for qualified immunity purposes. *Pratt*, 65 F.3d at 806 & n.4. Thus, at the time of Defendants' conduct, it was not reasonable for prison guards to believe that they could retaliate against a prisoner for utilizing the grievance system.

Therefore, the court recommends that Defendants' motion to dismiss on the grounds of qualified immunity be denied.

## V. CONCLUSION

For the reasons stated above, the undersigned recommends that the motion to dismiss (Dkt. 15) should be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and

REPORT AND RECOMMENDATION - 12

Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 12, 2010,** as noted in the caption.

DATED this  25th  day of January, 2010.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13